UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

136 Field Point Circle Holding Company, LLC,

        *Plaintiff*,

        -against-

ALEXANDER RAZINSKI and TANYA RAZINSKI,

        *Defendants*.

---------------------------------------------------------------

19cv5656

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

      This case is the latest installment in a Dickensian saga involving two holdover tenants and a multi-million dollar mansion in Greenwich, Connecticut. Plaintiff 136 Field Point Circle Holding Company, LLC brings this action against Defendants Alexander and Tanya Razinski, alleging breach of contract. 136 Field Point Circle Holding moves for summary judgment. (ECF No. 41.) For the following reasons, 136 Field Point Circle Holding's motion is granted.

BACKGROUND

I. Purchase of the Property

      In 2007, the Razinskis contracted to purchase the property for $19 million from the 136 Field Point Circle Trust Dated November 6, 1998 (the "Trust"). (Baker Aff., Ex. 1.) The Razinskis tendered a $1 million down payment but were unable to close on the sale. On June 1, 2017, the Razinskis and the Trust entered into an option agreement whereby the Razinskis paid an additional $9 million for the option to purchase the property for $19 million by May 30, 2012. (Baker Aff., Ex. 2.)

As the option's expiration date approached, the Razinskis did not have the financial resources to purchase the property. Faced with the possibility of forfeiting the $10 million they had already paid, the Razinskis sought other financing arrangements from Nicholas Prouty, the principal of Putnam Bridge Funding III, LLC. Ultimately, the Razinskis and Prouty entered into an agreement in which the Razinskis assigned their option to a new entity, 136 Field Point Circle Holding, a subsidiary of Putnam Bridge Funding III, LLC, which exercised the option and purchased the property. This transaction was governed by the Master Agreement. (Baker Aff., Ex. 3.) The Master Agreement provided that the Razinskis could lease the property for one year at a rate of $25,000 a month, with the option to extend the term up to six months. (Master Agreement § 2.1.) As part of the Master Agreement, the Razinskis also acquired an option to purchase the property from 136 Field Point Circle Holding by November 17, 2013. (Master Agreement § 3.1.) Finally, the Master Agreement contained a provision providing liquidated damages in the event the property was not sold. That provision stated, in part:

> Failure to Sell. If the Property fails to sell within two (2) years after [May 17, 2012] (other than as a result of Purchaser's refusal to accept a bona fide offer providing for payment of the full purchase price in cash upon closing), the Razinskis shall be jointly and severally obligated to pay Purchaser an immediate cash payment of $1,000,000, which shall be in addition to any Deficit payment resulting from a subsequent sale of the Property.

(Master Agreement § 6.4.)

## II. Litigation

Once again, the Razinskis did not exercise the option to purchase. Instead, they filed a suit in New York State Supreme Court (New York County) alleging they had an equitable mortgage and a <u>lis pendens</u> on the property. The New York State Supreme Court granted summary judgment for 136 Field Point Circle Holding and dismissed the action. (Baker Aff.,

Ex. 6.) The Appellate Division, First Department affirmed the decision. (Baker Aff., Ex. 7.) The Razinskis sought leave to appeal to the New York Court of Appeals from both the First Department and New York Court of Appeals. Both requests were denied. (See Baker Aff. Ex. 8.)

Undeterred, the Razinskis filed a new lawsuit in New York State Supreme Court alleging fraud. They principally alleged that 136 Field Point Circle Holding made an oral promise that the Razinskis could maintain a $10 million lien on the property. (Baker Aff., Ex. 9.) In tandem with this new lawsuit, the Razinskis filed another lis pendens on the property. (Baker Aff., Ex. 10.) On January 30, 2019, the New York State Supreme Court cancelled that second lis pendens. (Baker Aff., Ex. 11.)

On October 4, 2019, the Razinskis filed a third lis pendens, (Baker Aff., Ex. 12), which the New York State Supreme Court promptly cancelled, (Baker Aff., Ex. 13). In doing so, the state court admonished the Razinskis for their "improper filing of notices of pendency and numerous repeated actions related to the same transactions before different courts." (Baker Aff., Ex. 13.) The court further ordered that "no further notices of pendency may be filed related to the property unless the court in which the action related to the property is pending specifically authorizes the filing of a notice of pendency before it is filed." (Baker Aff., Ex. 13.)

III. The Razinskis' Holdover Tenancy

Pursuant to § 2.1 of the Master Agreement, the Razinskis leased the property from May 2012 to May 2013, and then extended the lease six months to November 17, 2013. However, once the lease expired, the Razinskis failed to vacate the property. 136 Field Point Circle Holding brought an action in Connecticut state court to evict them. Five years later, 136 Field Point Circle Holding obtained an order of eviction. (Baker Aff., Ex. 17, at 2.) The

3

Razinskis sought a stay of the Connecticut court's eviction order from the New York State Supreme Court. On December 3, 2018, the New York Supreme Court denied the Razinskis' request. (Baker Aff., Ex. 17.)

Meanwhile, on September 6, 2013, 136 Field Point Circle Holding filed an action in this District to enforce a guarantee by the Razinskis' company, Invar International Holding, Inc. See 136 Field Point Holding Co. LLC v. Invar Int'l Holding, Inc., 2015 WL 1254846, at *1 (S.D.N.Y. Mar. 19, 2015), aff'd 644 F. App'x 10 (2d Cir. 2016) (summary order). There, Invar had guaranteed a liquidated damages provision in the Master Agreement pertaining to the Razinskis failure to vacate the property after their lease expired. On March 19, 2015, the district court granted 136 Field Point Circle Holding's motion for summary judgment and awarded it $1 million. 136 Field Point Circle Holding, 2015 WL 1254846, at *7.

IV. This Action

On June 18, 2019, 136 Field Point Circle Holding filed this action against the Razinskis seeking enforcement of § 6.4 of the Master Agreement. 136 Field Point Circle Holding alleges that because the property did not sell by the designated date, the Razinskis owe liquidated damages of $1 million.

## DISCUSSION

I. Legal Standard

Summary judgment is proper only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quotation marks omitted). This Court is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." Rodriguez v. City of New York, 72 F.3d 1051, 1060–61 (2d Cir. 1995). Where the non-movant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment by pointing to evidence that negates the non-movant's claims or by pointing to a lack of evidence for the trier of fact on an essential element of the non-movant's claim. CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013). If the movant makes this showing, the burden shifts to the non-movant to "point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006).

"In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation and alterations omitted).

Because the Razinskis are proceeding pro se,[1] this Court is required to construe their submissions liberally and interpret them "to raise the strongest arguments that they

---

[1] The Razinskis initially retained counsel in this action. (See ECF No. 11.) However, their attorney moved to withdraw, (ECF No. 19), and this Court granted his application after conducting a conference with all of the parties, (see ECF No. 22). The Razinskis claimed they were unable to retain new counsel and opted to proceed pro se.

5

suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted).

II. Prima Facie Case

"To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." Nat'l Mkt. Share. Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004). "Summary judgment is appropriate in a breach of contract action where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." Farago Adver., Inc. v. Hollinger Int'l, Inc., 157 F. Supp. 2d 252, 258 (S.D.N.Y. 2001); see also Ellenoff Grossman & Schole, LLP v. Rosenberg, 2015 WL 1938138, at *2 (S.D.N.Y. Apr. 16, 2015). Under New York law, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." W.W.W. Associates, Inc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990).

The liquidated damages provision at issue here provides for a $1 million payment if the property did not sell within two years after closing. (See Master Agreement § 6.4.) It is undisputed that the property did not sell. Section 6.4 contains only a single exception: if 136 Field Point Circle "refus[es] to accept a bona fide offer providing for payment of the full purchase price in cash upon closing." (Master Agreement § 6.4.) But no bona fide offer was made. As such, 136 Field Point Circle Holding has established that the Razinskis breached the Master Agreement § 6.4 and are owed $1 million in liquidated damages.

III. Whether the Liquidated Damages Provision is Enforceable

The Razinskis offer a host of affirmative defenses. To begin, they aver that the liquidated damages provision is not enforceable. For liquidated damages clauses, the "well

6

established" New York rule is that "[a] contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc., 361 N.E.2d 1015 (N.Y. 1977). "The burden is on the party seeking to avoid liquidated damages . . . to show that the stated liquidated damages are, in fact, a penalty." JMD Holding Corp. v. Cong. Fin. Corp., 828 N.E.2d 604 (N.Y. 2005). "The penalty doctrine applies to liquidated damages clauses where the 'damages [are] grossly disproportionate to the amount of actual damages.'" In re Lehman Bros. Holdings Inc., 970 F.3d 91, 105–06 (2d Cir. 2020) (alteration in original) (quoting 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, 25 N.E.3d 952, 957 (N.Y. 2014)).

The Razinskis do not address this burden, let alone meet it. Nor can this Court conclude that the liquidated damages provision in § 6.4 is a penalty. Damages of $1 million for the failure to sell a property worth between $20 and $30 million, (see Master Agreement § 6.1(a)), falls far short of grossly disproportionate.

The Razinskis argue that the New York State Supreme Court previously invalidated this specific liquidated damages provision. They are mistaken. The New York State Supreme Court denied summary judgment on a different liquidated damages provision—§ 2.3, not § 6.4. (Baker Aff., Ex. 6, at 12–13.)

IV.  Whether 136 Field Point Circle Holding had an Obligation to Sell the Property

The Razinskis assert that 136 Field Point Circle Holding failed to adequately market the property. However, the contract does not require 136 Field Point Circle Holding to market the property. Indeed, the Master Agreement provides the opposite. Section 6.1(a) states, in part, "[f]or the avoidance of doubt and notwithstanding anything to contrary herein, in no

event shall [136 Field Point Circle Holding] be required to list the Property for sale or accept any offer for the Property." As such, this Court concludes that 136 Field Point Circle Holding did not have an obligation to market the Property.[2]

V.    Whether the Contract is Ambiguous

The Razinskis next argue that the Master Agreement is ambiguous. "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." W.W.W. Assocs., 566 N.E.2d at 642; see also Baez v. N.Y.C. Hous. Auth., ---F. Supp. 3d ---, 2021 WL 1371793, at *5 (S.D.N.Y. Apr. 12, 2021). "[A] contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." Lockheed Martin Corp. v. Retail Holdings N.V., 639 F.3d 63, 69 (2d Cir. 2011) (citing White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007)). Conversely, "the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Lockheed Martin, 639 F.3d at 69.

Specifically, the Razinskis aver that § 6.4 is ambiguous. As the Razinskis note, § 6.1(a) provides the timeline for selling the property. That provision states, in part:

> Upon the earlier of: (i) the one (1) year anniversary of [May 17, 2012] (or, in the event of an extension as provided in Section 3.1, the eighteen (18) month anniversary of [May 17, 2012]); or (ii) the Early Termination Date (provided that the Call Closing and the Put Closing have not occurred by such time), Purchaser shall have the option to list the Property for sale . . . .

---

[2]  Even if such a requirement did exist, 136 Field Point Circle Holding would still be entitled to summary judgment. Because the Razinskis filed no less than three lis pendens, (see Baker Aff., Exs. 5, 10, 12), and failed to vacate the property after their lease expired, no reasonable juror could conclude that a property worth tens of millions of dollars could be sold. (See Aff. Of Stephen G. Walko in Supp. of Mot. for Summ. J., ECF No. 44 ¶ 19.)

8

(Master Agreement § 6.1(a).) They argue that § 6.1(a) conflicts with § 6.4(b). However, the Master Agreement does not contain a § 6.4(b). This Court assumes, based on the quotations in the Razinskis' briefing, that they intended to cite § 6.1(a) and argue that this provision conflicts with itself. However, this Court fails to see any ambiguity. The provision merely prescribes different timelines based on whether other provisions of the Master Agreement are invoked. Those contingencies do not spawn multiple plausible readings of the Master Agreement.

The Razinskis further argue that there is ambiguity between the timeline that provides for sale and the exculpatory clause in § 6.1 that provides that "in no event shall [136 Field Point Circle] be required to list the Property for sale or accept any offer for the Property." The Razinskis, however, do not explain what ambiguity this creates, and this Court is unable to divine any.

VI. <u>Implied Covenant of Good Faith and Fair Dealing</u>

Further, the Razinskis also argue that 136 Field Point Circle Holding breached the implied covenant of good faith and fair dealing. While the Razinskis do not style it as such, this Court interprets their implied covenant of good faith and fair dealing as an affirmative defense. See, e.g., <u>Apex Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.</u>, 2017 WL 456466, at *10 (S.D.N.Y. Feb. 1, 2017) (party asserting implied covenant of good faith and fair dealing as an affirmative defense).

"Under New York law, parties to an express contract are bound by an implied duty of good faith." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks omitted). The implied covenant of good faith and fair dealing holds parties to those implied promises "so interwoven into the contract as to be necessary for effectuation of the purposes of the contract." <u>Thyroff v. Nationwide Mut. Ins. Co.</u>, 460 F.3d 400, 407 (2d Cir.

2006) (quotation marks omitted). New York law provides that every contract includes such a covenant. See Kader v. Paper Software, Inc., 111 F.3d 337, 342 (2d Cir. 1997); Cohen v. Elephant Wireless, Inc., 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004). The covenant is breached when one party's actions "would deprive the other party of receiving the benefits under their agreement." Sorenson v. Bridge Capital Corp., 861 N.Y.S.2d 280, 282 (1st Dep't 2008). However, "a breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract." Canstar v. J.A. Jones Const. Co., 622 N.Y.S.2d 730, 731 (1st Dep't 1995); see also Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) ("[B]reach of [the implied covenant] is merely a breach of the underlying contract.").

The Razinskis are unable to marshal any facts to support their position. Rather, the record demonstrates that the Razinskis engaged in a scorched-earth campaign to avoid their obligations under the Master Agreement and to holdover past their lease. No reasonable jury could find that 136 Field Point Circle Holding breached the implied covenant of good faith and fair dealing.[3]

VII. Whether a Prior Breach could Excuse the Razinskis' Breach

Finally, The Razinskis argue that any breach on their part is excused because 136 Field Point Circle breached the agreement first by failing to advance $1 million pursuant to § 1.1 of the Master Agreement. To determine whether a breach excuses the non-breaching party's performance, the question is "whether the parties' promises are independent of, or dependent on, each other; if the latter, one party's performance of a particular promise is a condition precedent to the other party's performance." Indian Harbor Ins. Co. v. Dorit Baxter Skin Care, Inc., 430 F.

---

[3] The Razinskis also vaguely refer to a breach of fiduciary duty. However, they fail to allege any fiduciary duties, much less a breach.

Supp. 2d 183, 192 (S.D.N.Y. 2006). Whether covenants in a lease are dependent or independent "is a question to be determined by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication." Greasy Spoon Inc. v. Jefferson Towers, Inc., 551 N.E.2d 585, 587 (N.Y. 1990); see also Pfizer, Inc. v. Stryker Corp., 348 F. Supp. 2d 131, 147 (S.D.N.Y. 2004) (same).

Here, the promises are indisputably unrelated. The breach at issue in this litigation is the failure to sell the property. The breach the Razinskis cite pertains to funding the Razinskis' arbitration with a third-party. That provision has nothing to do with the property.

## CONCLUSION

For the foregoing reasons, 136 Field Point Circle Holding's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment in favor of the Plaintiff for the amount of $1,000,000. The Clerk of Court is directed to terminate the motion pending at ECF No. 41 and mark this case closed.

Dated: May 6, 2021
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.